# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9295 | **DATE** | 8/13/2003 |
| **CASE TITLE** | CENTRAL STATES vs. MARS LEASING COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 10/22/03 at 9:00 a.m. Enter Memorandum Opinion And Order. Mars' motion for summary judgment or partial summary judgment and a stay of certain proceedings are denied. Plaintiffs' motion for summary judgment is granted. Plaintiffs are directed to submit proof of the claimed amount of the interim payments, plus any interest, liquidated damages and fees and costs plaintiffs seek, on or before 8/28/03. Defendant is directed to respond to plaintiffs' submission concerning the judgment amount on or before 9/11/03.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | AUG 18 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| LG | courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and HOWARD McDOUGALL, trustee, ) ) ) ) | |
| Plaintiffs, ) | No. 02 C 9295 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| MARS LEASING COMPANY, a Wisconsin corporation, ) ) ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund ("Central States") and Howard McDougall, filed suit against Defendant, Mars Leasing Company ("Mars"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking collection of interim withdrawal liability payments. Presently before the Court are Plaintiffs' Motion for Summary Judgment and Mars' Motion for Summary Judgment or Partial Summary Judgment and a Stay of Certain Proceedings.

Central States is a multi-employer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3). Howard McDougall is a trustee and fiduciary of Central States. (Def.'s 56.1(a)(3) Statement ¶ 1). Mars is a Wisconsin corporation. (Id., ¶ 4). Harvey Service, Inc. ("Harvey") is also a Wisconsin corporation. (Id., ¶ 7).

Harvey was subject to a series of collective bargaining agreements, executed with various local unions affiliated with the International Brotherhood of Teamsters, under which it was required to make contributions to Central States on behalf of certain employees. (Def.'s 56.1(a)(3) Statement



¶ 8). Plaintiffs determined that as a result of a decline in Harvey's contributions to Central States, Harvey effected a "partial withdrawal" from Central States on December 31, 1996. (Plaint.'s 56.1(a)(3) Statement ¶ 9). Plaintiffs determined that, as a result of this partial withdrawal, Harvey incurred withdrawal liability in the amount of $498,642.70, as determined under Section 4201(b) of ERISA. (Id., ¶ 10).

On or about May 28, 1997, Harvey received a notice and demand for payment of withdrawal liability issued by Central States in accordance with Sections 4202(2) and 4219(b)(1) of ERISA. The notice and attached invoice notified Harvey that it was required to discharge its liability in monthly payments of $23,505.12. (Plaint.'s 56.1(a)(3) Statement ¶ 11). On or about August 23, 1997, Harvey received notice from Central States that its withdrawal liability payments were past due. (Id., ¶ 12). Harvey did not timely initiate arbitration pursuant to Section 4221(1) of ERISA; and consequently, the amounts demanded by Central States are due and owing. (Id., ¶ 13).

Later that year, Plaintiffs filed suit against Harvey to collect the withdrawal liability, *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Harvey Service, Inc.*, No. 97 7960 (N.D. Ill) ("Harvey lawsuit"). (Plaint.'s 56.1(a)(3) Statement ¶ 15). On February 11, 1998, Plaintiffs obtained a default judgment against Harvey in the total amount of $688,331.74. (Id., ¶ 16).

During post-judgment discovery, Plaintiffs learned that prior to December 15, 1995, Mary Tidmarsh ("Tidmarsh") was the sole shareholder of both Harvey and Mars and that she was also president of both Harvey and Mars. (Plaint.'s 56.1(a)(3) Statement ¶ 18). The post-judgment citation of Tidmarsh, taken in August 2, 1998, disclosed that, in 1995, Tidmarsh sold the stock of Mars to her son, Greg Tidmarsh ("Greg"). Tidmarsh could not recall the exact purchase price of the stock.

(Id., ¶ 17). Plaintiffs also learned that, in 1993, Mars was formed for the explicit purpose of making asset purchases and managing property. At that time, Mars purchased property on South Curtis Road for a purchase price of $475,000, with $100,000 down payment and the remaining financed by a loan. (Id., ¶ 19; Def.'s Response to ¶ 19). Plaintiffs also learned that the South Curtis Road property was sold in 1997; however, Tidmarsh could not recall the exact name of the purchaser nor the purchase price on August 2, 1998. (Id., ¶ 20).

On July 11, 2000, Plaintiffs served their first set of interrogatories and first request for production of documents on Harvey. (Plaint.'s 56.1(a)(3) Statement ¶¶ 21-22). In Harvey's answer to Plaintiffs' first request for production of documents forwarded by Harvey in its answer to the request for production of documents, received on September 22, 2000, it was revealed that Tidmarsh received $213,650 in compensation for the sale of Mars to her son. (Id., ¶ 23).

On March 12, 2001, Plaintiffs served their second set of interrogatories and second request for production of documents on Harvey. (Plaint.'s 56.1(a)(3) Statement ¶¶ 24 - 25). Plaintiffs received the responses to the second set of discovery requests on April 26, 2001. (Id., ¶ 26).

On October 24, 2001, Plaintiffs served their third set of interrogatories and third request for production of documents on Harvey. (Plaint.'s 56.1(a)(3) Statement ¶¶ 27-28). In this set of discovery requests, Plaintiffs inquired as to the circumstances surrounding the 1997 sale by Greg of the property held by Mars. (Id., ¶ 29). By letter dated January 9, 2002, Harvey's counsel informed Plaintiffs that the third set of discovery requests were beyond the area of relevant inquiry and were, therefore, unanswered. Harvey also indicated that the period for discovery was complete and that Plaintiffs would need leave of court prior to forwarding any additional requests. (Id., ¶ 30). Based

on Plaintiffs' search of county records, Plaintiffs learned that, on June 2, 1997, Greg sold the South Curtis Road property to the Accetta Family Limited Partnership for $792,500. (Id., ¶ 31).

Tidmarsh requested an estimate of Harvey's withdrawal liability from Central States for the years 1993 through 1996. (Plaint.'s 56.1(a)(3) Statement ¶ 32). A review of Harvey's financial records showed that, in the years 1992 and 1993, Harvey experienced reduced revenues and incurred substantial losses. (Id., ¶ 33).

On December 19, 2002, based on their belief that Harvey and all other trades or businesses under common control, including Mars, constituted a single employer within the meaning of ERISA, Plaintiffs sent a notice and demand for payment of withdrawal liability to Mars. The notice and attached invoice notified Mars that it was required to discharge its liability in monthly payments of $23,505.12, with the first payment due on January 1, 2003. (Plaint.'s 56.1(a)(3) Statement ¶¶ 34 - 35). Mars has failed to make any withdrawal liability payments to Central States. (Id., ¶ 39).

On or about March 24, 2003, Mars initiated arbitration on Plaintiffs' withdrawal liability assessment against Mars in accordance with Section 4221 of ERISA, 29 U.S.C. § 1401. The arbitration proceeding is currently pending. (Plaint.'s 56.1(a)(3) Statement ¶ 38). The pre-trial conference for the arbitration was scheduled for May 15, 2003. The arbitration is presently scheduled for October 1 - 2, 2003. (Id., ¶ 42; Def.'s Response ¶ 42).

Plaintiffs filed this action, on February 10, 2003, to collect interim withdrawal liability payments that were due from Mars because, prior to a Stock Purchase Agreement whose principal purpose was to evade or avoid withdrawal liability, Mars was under common control with Harvey, an employer which had effected a complete withdrawal from the pension fund pursuant to 29 U.S.C. § 1383.

Mars seeks an order dismissing Plaintiffs' Amended Complaint because it is barred by the doctrine of laches or, in the alternative, an order staying the arbitration proceedings pending adjudication by this Court of Plaintiffs' claim against Mars.

Mars first contends that the instant suit should be dismissed under the doctrine of laches. Failure to bring an action in a timely manner, also known as the doctrine of laches, is an affirmative defense. *See* Fed. R. Civ. P. 8(c). However, challenges and defenses to a withdrawal liability assessment are required to be brought in arbitration. *See Girouz Bros. Transp., Inc. v. New England Teamsters Pension Fund*, 73 F.3d 1, 3-4 (1st Cir. 1996); *Vaughn v. Sexton*, 975 F.2d 498, 502 (8th Cir. 1992); *Chicago Truck Drivers, Helpers & Warehouse Workers Union v. Gateco, Inc.*, 1993 WL 210539 (June 11, 1993). Accordingly, Mars' affirmative defense must be presented in the pending arbitration, and dismissal of the instant suit for interim withdrawal liability is denied.

Mars next contends that this Court should decide the merits of Plaintiffs' claim for withdrawal liability, instead of the arbitrator, because Plaintiffs have waived their statutory right to arbitrate by refusing to sign a joint submission to arbitrate. Mars' argument is without merit.

Mars concedes that it initiated arbitration in March 2003 in regards to Plaintiffs' withdrawal liability assessment against Mars in accordance with Section 4221 of ERISA, 29 U.S.C. § 1401. Furthermore, that arbitration proceeding is currently pending and is scheduled for October 1 - 2, 2003.

Lastly, Mars seeks to have the Court stay any attempts by Plaintiffs to invoke the acceleration provisions of ERISA. However, Plaintiffs have not invoked the acceleration provisions of ERISA. Accordingly, any stay would be premature.

5

Plaintiffs have moved for summary judgment, seeking an order that Mars make the interim payments due to Plaintiffs while the arbitration is pending.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Specific rules have been prescribed by Congress for resolving disputes between pension funds and employers over withdrawal liability. The parties must submit the issue to arbitration, 29 U.S.C. § 1401; and the employer must make interim payments pending an arbitration ruling, 29 U.S.C. § 1399(c)(2). Accordingly, the general rule under ERISA is "pay now, arbitrate later". *See Central States, Southeast and Southwest Areas Pension Fund v. Nitehawk Express, Inc.*, 223 F.3d 483, 496 (7th Cir. 2000). If the employer refuses to make the interim payments, the plan may file a civil action in federal court to collect the interim payments. 29 U.S.C. § 1451(a)(1). Furthermore, the statute provides that "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." 29 U.S.C. § 1451(b). The statute also provides that, in any action by a plan to enforce an employer's delinquent contributions, "the court shall award the plan" reasonable attorney's fees, costs, and liquidated damages if the action results in a "judgment in favor of the plan". 29 U.S.C. § 1132(g)(2).

The "pay now, arbitrate later" interim payment rule has a narrow exception. The court has discretion to decline the order of interim payments if: (1) the fund's claim is frivolous and (2) making the interim payments would irreparably harm the employer. *See Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Rentar Indus., Inc.*, 951 F.2d 152, 154-55 (7th Cir. 1991) (*Rentar*); *Robbins v. McNicholas Transp. Co.*, 819 F.2d 682, 685 (7th Cir. 1987). The employer must make an affirmative showing that the plan's claim has no merit, *i.e.*, no arguable basis in law or fact. *See Rentar*, 951 F.2d at 155; *Central States, Southeast & Southwest Areas Pension Fund v. Manning Motor Express*, 125 F. Supp. 2d 1113, 1115 (N.D. Ill. 2000). The court may only excuse interim payments if "the arbitrator is almost certain to rule for the employer." *See Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 119 (7th Cir. 1991).

In the instant case, it is undisputed that the interim withdrawal liability payments requirement of ERISA is applicable. Mars relies on the narrow exception to the requirement of such interim payments in an attempt to avoid such payments pending arbitration. Specifically, Mars argues that Plaintiffs have failed to demonstrate their claim for withdrawal liability against Mars has merit. Mars does not argue, and presents no evidence whatsoever, that making the interim payments would irreparably harm Mars. Accordingly, Mars has failed to demonstrate that the narrow exception to interim withdrawal liability payments is applicable. *See Rentar*, 951 F.2d at 155.

Assuming arguemndo that Mars did argue and presented evidence demonstrating making the interim payments would irreparably harm Mars, the exception still fails to apply because Mars has failed to demonstrate that it is almost certain that it would prevail before the arbitrator. While Mars may ultimately prevail before the arbitrator, the allegations and facts set forth above show an

7

arguable basis for Plaintiffs' position. Accordingly, the narrow exception would not apply; and summary judgment in favor of Plaintiffs is granted.

For the foregoing reasons, Mars' Motion for Summary Judgment or Partial Summary Judgment and a Stay of Certain Proceedings are denied. Plaintiffs' Motion for Summary Judgment is granted. Plaintiffs are directed to submit proof of the claimed amount of the interim payments, plus any interest, liquidated damages and fees and costs Plaintiffs seek, on or before August 28, 2003. Defendant is directed to respond to Plaintiffs' submission concerning the judgment amount on or before September 11, 2003. The case is set for status on October 22, 2003 at 9:00 a.m.

Dated: August 13, 2003

JOHN W. DARRAH
United States District Judge